**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| HVI Cat Canyon, Inc., | Case No. 19-12417-MEW |
| Debtor. | |

**SECURED CREDITOR UBS AG, LONDON BRANCH'S MOTION**
***IN LIMINE* TO PRECLUDE 2016 NETHERLAND SEWELL**
**RESERVE REPORT AT CASH-COLLATERAL HEARING**

## TABLE OF CONTENTS

                                        **Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 1

    *UBS is Debtor's senior secured creditor and holds liens on all of Debtor's assets, including the oil still in the ground.* ............................................... 1

    *In its motion to approve cash collateral, Debtor asserts enterprise value based on the 2016 Reserve Report.* ......................................................... 2

    *Debtor did not supplement its testimony on value after the First-Day Hearing.* .................................................................................. 3

ARGUMENT ................................................................................................................................. 3

    THE 2016 RESERVE REPORT IS INADMISSIBLE HEARSAY, AS THE COURT HAS ALREADY HELD. ............................................................... 3

CONCLUSION ............................................................................................................................. 6

## PRELIMINARY STATEMENT[1]

Secured Creditor UBS moves *in limine* for an order to preclude Debtor from relying on the 2016 Netherland Sewell Reserve Report at the upcoming final cash-collateral hearing because that report is inadmissible hearsay.  Indeed, the Court already so ruled at the August 1, 2019 First-Day Hearing.  When Debtor had a chance to supplement its proposed proof in support of its pending cash-collateral motion, it submitted a non-narrative, four-paragraph declaration from its chairman Randeep Grewal, who had testified at length at the First-Day Hearing.  That declaration did nothing at all to cure the 2016 Reserve Report's hearsay problem.  Instead, Debtor simply tried to reargue that the 2016 Reserve Report is admissible by asserting the same rationale as at the First-Day Hearing, *i.e.*, that alleged authenticity somehow resolves the hearsay problem.  It does not.

The 2016 Reserve Report was inadmissible then, and it is inadmissible now.  Just as inadmissible is any testimony based on that hearsay report.  Therefore, the Court should disregard such alleged valuation testimony from the First-Day Hearing transcript.

## BACKGROUND

### *UBS is Debtor's senior secured creditor and holds liens on all of Debtor's assets, including the oil still in the ground.*

Debtor and its affiliated co-borrower RILP and parent holding company GOGH owe UBS more than $125 million under two secured credit agreements that have been in default for several years.[2]  Debtor's obligations under the credit agreements are secured, valid, perfected, and non-avoidable first- and second-priority liens on all of its assets.  UBS's collateral includes,

---

[1] "UBS" refer to UBS AG, London Branch.  "HVICC" or "Debtor" refers to HVI Cat Canyon, Inc.  "2016 Reserve Report" refers to Netherland, Sewell and Associates, lnc.'s Estimate of Reserves and Future Revenue to the HVI Cat Canyon, Inc. Interest in Certain Oil and Gas Properties located in California as of December 31, 2016.

[2] "RILP" refers to Rincon Island Limited Partnership and "GOGH" refers to GOGH, LLC.

1

without limitation, all cash collateral, Debtor's interests in oil and gas properties located in Santa Barbara County, Kern County, and Orange County, California, and the proceeds generated from Debtor's production and sale of oil.

Debtor's oil and gas properties represent the overwhelming majority of value in UBS's collateral. Debtor's business model is relatively straightforward. The Debtor has leasehold interests in oil and gas properties and accesses the reserves to extract, sell, and convert the underlying oil into cash proceeds. Debtor then uses the cash proceeds to pay operating expenses incurred producing oil. In turn, Debtor repeats the cycle of extracting and selling oil to generate more cash proceeds to pay its operating expenses and continue producing more oil. But Debtor's oil reserves are diminishing natural resources that will eventually be exhausted. In the process of extracting the oil, Debtor continually depletes the aggregate reserve bases, but it does not create any new assets that are not already encumbered by UBS's liens. Rather, Debtor simply sells crude oil that is UBS's collateral and generates cash proceeds that also are UBS's collateral.

*In its motion to approve cash collateral, Debtor asserts enterprise value based on the 2016 Reserve Report.*

In its July 30, 2019 motion to approve cash collateral, Debtor asserts that the "2016 year-end valuation of Debtor's assets provides a net present value for Debtor's oil and gas reserves, subject to Secured Lender's lien, of $235 million."[3] In the supporting declaration, Debtor also asserts that "the price per barrel has risen from approximately $55" at the time of the report "to today's price of $57.28, an increase of approximately 4%, thus bringing the value of the reserve assets to upwards of $245 million or greater, well in excess of Secured Creditors' liens."[4]

---

[3] Docket No. 11 at ¶ 11.
[4] Docket No. 11 at ¶ 13.

Mr. Grewal then testified to this at the First-Day Hearing. He made clear that his view of the "value of the assets" was based on the 2016 Reserve Report, testifying that "a rule of thumb would be that a Netherland Sewell report is a very good indicator of value."[5] Mr. Grewal offered no other foundation for his view of value.

*Debtor did not supplement its testimony
on value after the First-Day Hearing.*

When Debtor had a chance to supplement its proof in support of its cash-collateral motion, it submitted a four-paragraph declaration from Mr. Grewal. That declaration offers no knew testimony about value. Mr. Grewal simply attempts to authenticate the 2016 Reserve Report in a single paragraph.[6]

Debtor has offered no more recent reserve reports. Nor does Debtor offer any independent valuation from an expert or anyone else. Debtor's counsel has stated that they do not intend to call any other witnesses at the cash-collateral hearing (while reserving their rebuttal rights).

**ARGUMENT**

**THE 2016 RESERVE REPORT IS INADMISSIBLE
HEARSAY, AS THE COURT HAS ALREADY HELD.**

At the First-Day Hearing, Debtor's counsel sought to question Mr. Grewal about the 2016 Reserve Report and whether it showed that UBS was "secured, under-secured, or over-secured."[7] After some colloquy, the Court made the following ruling about the reserve report:

> Look, you can ask him if he knows personally whether reports were sent to UBS, and how many times and when the most recent one was, but testimony about what the reports said or showed without the reports

---

[5]  Hr'g Tr. at 44:21–23, 45:3–6.
[6]  Docket No. 52, Randeep Grewal's August 15, 2019 Declaration at ¶ 4.
[7]  Transcript of August 1, 2019 Hearing ("Hr'g Tr.") at 36:12.

3

themselves, without anybody who prepared them here to testify about them, is just hearsay.[8]

When Debtor's counsel made another pass at trying to have Mr. Grewal testify based on the 2016 Reserve Report, the Court had this to say:

> THE COURT: Well, his discussion of the Netherland Sewell report is discussion of hearsay.
>
> MR. WELTMAN: I understand.
>
> THE COURT: If he's—you haven't qualified him as an expert, you've asked him based on different grounds, so I don't know how he can testify as to a value based on a hearsay report.
>
> .   .   .
>
> THE COURT: They're still—well, you know, you provide reports to people under your agreements for various commercial reasons, but that doesn't mean that they're admissible in court without something to validate what they are and how they were prepared ***and testimony by the author***, for example, that it actually was preapared and is valid and states an honest opinion that still exists.  You know, whether it's oral or whether it's written, ***it is still hearsay***.  ***It's an out-of-court, unsworn statement***.[9]

That ruling was of course correct.  The 2016 Reserve Report is classic hearsay under Federal of Evidence 801.

Because Debtor did not move to reargue or reconsider that ruling, the matter is *res judicata*.  *See In re Ridgemour Meyer Properties, LLC*, 599 B.R. 215, 239–40 (S.D.N.Y. 2019) (a matter is *res judicata* if it has been adjudicated and not pursued any further). The Court should not allow Debtor to proffer now in its supplemental submission the exact same document that the Court held to be hearsay just two weeks earlier.

Moreover, any testimony based on the 2016 Reserve Report is also inadmissible.  *United States v. Cummings*, 858 F.3d 763, 774 (2d Cir. 2017) (testimony that relies on inadmissible

---

[8]   Hr'g Tr. at 38:20–25.

[9]   Hr'g Tr. at 45:19–46:7 (emphasis added).

hearsay not subject to an exception is inadmissible).  Therefore, Mr. Grewal's testimony at the First-Day Hearing about the alleged value of UBS's collateral—which was based entirely on the 2016 Reserve Report—was inadmissible hearsay.  Specifically, when counsel asked if Mr. Grewal had a "sense of the value of the assets," in answering that "UBS's debt will be addressed through the asset sales," he explained that his testimony was based on the 2016 Reserve Report:

> ***That view comes from a standpoint that***, if we were to look at the market—and the market changes based on oil price, the market changes on jurisdiction and cycles, but ***a rule of thumb would be that a Netherland Sewell report is a very good indicator of value***, because Netherland Sewell is a very conservative auditor of value and they do not give you any upside in that report, it's basically a future cash flow with a current discount factor.  So you can take a view on that.  When it comes to the market—[10]

UBS's counsel preserved the hearsay objection on the record.[11]  The Court should now disregard Mr. Grewal's valuation testimony that was based on the 2016 Reserve Report.

---

[10]  Hr'g Tr. at 44:21–23, 45:3–12.
[11]  Hr'g Tr. at 44:21–23, 45:13–15.

5

## CONCLUSION

UBS respectfully requests that the Court preclude Debtor from relying on the 2016 Reserve Report—or on any testimony based on that report—to establish enterprise value. The Court has already so held because that report is hearsay. There is no reason to change that ruling now.

Dated: August 23, 2019  
       New York, NY

O'MELVENY & MYERS LLP

*/s/ Evan M. Jones*
Evan M. Jones (appearing *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
T: (213) 430-6000
F: (213) 430-6407
ejones@omm.com

Gary Svirsky
Times Square Tower
7 Times Square
New York, NY 10036
T: (212) 326-2000
F: (212) 326-2061
gsvirsky@omm.com

*Attorneys for UBS AG, London Branch*