Michael D. Warner, Esq. (TX Bar No. 00792304)
COLE SCHOTZ P.C.
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
Telephone: (817) 810-5265
Facsimile: (817) 977-1611
mwarner@coleschotz.com

Jeffrey N. Pomerantz, Esq.
Maxim B. Litvak, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Robert J. Feinstein, Esq.
Steven W. Golden, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Proposed Counsel to the Official Committee of
Unsecured Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HVI CAT CANYON, INC. | ) | Case No. 19-32857-hdh11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## STATEMENT OF POSITION OF OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS REGARDING MOTION TO USE CASH COLLATERAL

The Official Committee of Unsecured Creditors (the "Committee") of HVI Cat Canyon,

Inc. (the "Debtor"), hereby files this statement of position regarding the *Debtor's Motion for*

*Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 Approving Use of Cash*

*Collateral, Providing Adequate Protection and Setting Final Hearing Pursuant to Bankruptcy*

*Rule 4001* [Docket. No. 11], filed on July 30, 2019 (the "Cash Collateral Motion"). Following a

contested first day hearing on August 1, 2019 and subsequent negotiations between the Debtor and

its principal secured creditor, UBS AG, London Branch ("UBS"), before Judge Wiles of the United

States Bankruptcy Court for the Southern District of New York (the "NY Court"), the NY Court entered, on August 14, 2019, its *Interim Order Granting Debtor's Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 Approving Use of Cash Collateral, Providing Adequate Protection and Setting Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket. No. 43] (the "Interim Order"). Now that this case has been transferred to the Bankruptcy Court for the Northern District of Texas (this "Court") and a final hearing will be set by this Court, the Committee reserves any and all rights to amend or supplement this statement as appropriate. Further, the Committee has yet to be granted access to confidential information of the Debtor and therefore also reserves any and all rights to amend or supplement this statement on that basis. In support hereof, the Committee respectfully states as follows:

### Introduction

1.      The Committee has three principal areas of focus when it comes to the Cash Collateral Motion:

2.      First, the Debtor's ordinary course operations should be maintained and employees paid so that going concern value can be preserved, provided that any payments or transfers to insiders and affiliates are fully disclosed and analyzed for complete fairness to the Debtor's estate before any such transfers or payments are made. There may be conflicts of interest that exist between the Debtor and its affiliates that need to be carefully scrutinized before any further transfers and payments are made by the Debtor.

3.      Second, the Debtor's unencumbered assets, including any avoidance claims, should be preserved for the benefit of unsecured creditors. The Committee's professionals

also should have the benefit of a standard carve-out from the liens and claims of UBS and GLR (as defined below) for the Committee's budgeted fees and expenses.

4.      <u>Third</u>, the Committee and its professionals should be granted full access to the Debtor's books, records, and representatives (subject to any appropriate privilege restrictions) and reporting information provided to UBS and GLR so that the Committee can get fully up to speed on the Debtor and its affairs.

5.      The Committee would support entry of a form of final (or further interim) cash collateral order that supersedes the existing Interim Order provided that such order adequately addresses the Committee's concerns set forth herein.

<b><u>Background</u></b>

6.      On July 25, 2019 (the "<u>Petition Date</u>"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the NY Court.  The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

7.      On July 30, 2019, the Debtor filed the Cash Collateral Motion in the NY Court, seeking to utilize the cash collateral of UBS and a second priority lien holder, GLR, LLC ("<u>GLR</u>"), which is an affiliate of the Debtor.

8.      On August 1, 2019, the NY Court held an interim hearing on the Cash Collateral Motion.  UBS objected to the relief requested and an evidentiary hearing was conducted.

At the conclusion of the hearing, the Debtor and UBS reached agreement in principle on the terms of interim use of cash collateral.

9. On August 9, 2019, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code [Docket No. 34]. The Committee consists of the following three (3) members: (a) Brian Corson, in his individual capacity; (b) Escolle Tenants in Common; and (c) Pacific California Petroleum, Inc.

10. On August 14, 2019, following negotiations between the Debtor and UBS after the interim hearing, the NY Court entered the Interim Order.

11. On August 27, 2019, following an evidentiary hearing, the NY Court ruled that this case would be transferred to this Court, which it was on August 29, 2019.

## Applicable Law

**A. The Debtor's Going Concern Value Should be Preserved, Provided That Appropriate Restrictions Are in Place With Respect to All Affiliate Transfers**

12. The Committee supports the Debtor's use of cash collateral in accordance with a reasonable approved budget that will preserve going concern value and maximize the value of these estates. The Debtor's use of cash collateral, however, should be completely transparent. The Debtor has a multitude of affiliates that appear to be named and renamed at various times for unknown purposes and that are the recipients of certain payments or transfers from the Debtor. Given the extent of intercompany relationships, conflicts of interest may exist between the Debtor and its affiliates. Before any payments or transfers by the Debtor to any affiliates can be approved, they need to fully vetted, understood, and approved by the Committee.

40000/0629-17772964v1

**B.** **UBS and GLR Should Not Be Granted Any Adequate Protection**
       **With Respect to the Estate's Unencumbered Assets**

13.     With respect to the issue of adequate protection in favor of UBS and GLR, it is well established that a secured party is not entitled to adequate protection absent a showing of the requisite cause. Specifically, a secured creditor is not entitled to adequate protection unless there is evidence that its collateral is declining a value. *See, e.g., In re Continental Airlines, Inc.,* 146 B.R. 536, 539 (Bankr. D. Del. 1992) ("Post-*Timbers* courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral."); *Zink* v. *Vanmiddlesworth,* 300 B.R. 394, 402-03 (N.D.N.Y. 2003) ("[T]he initial burden of showing the need for adequate protection [is] upon the creditor having an interest in the property being used by the debtor. In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value or establishing some other basis for the relief.") (internal citations omitted).

14.     The NY Court stated this point succinctly at the interim hearing:

> Well, it seems to me most of what we're doing here is unlikely to
> have had the effect of diminishing your [UBS'] position, because an
> awful lot of it seems to be essential to preserving a business that can
> be sold, and therefore maximizing the value of your collateral.

Transcript of Hearing, August 1, 2019, at 37, ln. 13-17.

15.     The Committee wholly agrees with the NY Court. UBS and GLR should not be entitled to any adequate protection beyond what is absolutely necessary to cover any potential diminution in value.

16. In this regard, unencumbered assets should be preserved for the benefit of unsecured creditors. Avoidance actions in particular are uniquely for the benefit of general creditors of the estate, not secured creditors. The intent behind avoidance powers and a debtor's power to bring causes of actions is to allow the debtor-in-possession to gain recoveries for the benefit of all unsecured creditors. *See Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partn. IV*, 229 F.3d 245, 250 (3d Cir. 2000); *In re Sweetwater*, 55 B.R. 724, 735 (D. Utah 1985) (avoiding powers are meant to benefit creditors generally and promote equitable distribution among all creditors). Accordingly, bankruptcy courts customarily restrict the ability of debtors-in-possession to pledge avoidance actions and their proceeds as security. *See, e.g., In re Goold Electronics Corp.*, 1993 WL 408366, at *3-4 (N.D. Ill. Sep. 22, 1993) (vacating DIP financing order to the extent that the order granted the lender a security interest in the debtor's preference actions).

17. The NY Court indicated the same reluctance to encumber avoidance actions at the interim hearing and reserved the Committee's rights on this point:

> I don't think I have ever granted DIP liens on avoidance actions or cash collateral liens, or adequate protection liens on the first day. And I'm very reluctant to do so . . . I will, for the interim period, give you [UBS] that protection and reserve for the committee the right to argue that I should limit that as a matter of adequate protection to only the interim period.

Transcript of Hearing, August 1, 2019, at 137, ln. 20-25 – 138, ln. 1-3.

18. The Committee indeed submits that UBS and GLR should not be granted any adequate protection (whether in the form of replacement liens or superpriority claims) in the Debtor's avoidance actions or other unencumbered assets, such as commercial tort claims, titled

6

vehicles (if any), and various other potential assets subject to ongoing review and diligence by the Committee. All such assets should remain unencumbered for the benefit of all unsecured creditors.

19. At the same time, the Committee's professionals need to have an adequate budget and a standard carve-out from the liens and claims of UBS and GLR in order to fulfill their statutory duties on behalf of the estate.

**C.**     **The Committee Must Be Provided with Robust Reporting by the Debtor**

20. Finally, the Committee should be provided, on a concurrent basis, with all reporting delivered by the Debtor to UBS and GLR, and ongoing access to the Debtor's books, records, and representatives. The Committee was appointed only two weeks ago and needs to have access to a substantial amount of information in order to familiarize itself with the Debtor's assets, liabilities, operations, and prospects.

21. Based upon the foregoing, the Committee would support entry of a form of final (or further interim) cash collateral order that addresses the Committee's concerns.

Dated: August 29, 2019                     Respectfully submitted,

                                        */s/ Michael D. Warner*
                                        Michael D. Warner, Esq. (TX Bar No. 00792304)
                                        COLE SCHOTZ P.C.
                                        301 Commerce Street, Suite 1700
                                        Fort Worth, TX 76102
                                        Telephone: (817) 810-5265
                                        Facsimile: (817) 977-1611
                                        mwarner@coleschotz.com

                                        and

Robert J. Feinstein, Esq. (*pro hac vice* forthcoming)
Steven W. Golden, Esq. (TX Bar No. 240996681)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Jeffrey N. Pomerantz, Esq. (*pro hac vice* forthcoming)
Maxim B. Litvak, Esq. (TX Bar No. 24002482)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

*Proposed Counsel to the Official Committee of
Unsecured Creditors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of August, 2019, I caused a true and correct copy of the foregoing pleading to be served upon all parties that are registered to receive electronic service through the court's CM/ECF notice system in the above case.

*/s/ Michael D. Warner*
Michael D. Warner

8

40000/0629-17772964v1